**Affirmed and Memorandum Opinion filed June 26, 2018.**



In the

# Fourteenth Court of Appeals

## NO. 14-16-00980-CV

**WILLIAM V. ROGERS and RONALD J. MARKS, Appellants**

**v.**

**ASSET LENDING, L.L.C., Appellee**

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2015-61117**

## M E M O R A N D U M   O P I N I O N

Appellee Asset Lending, L.L.C., brought suit to recover an unpaid deficiency balance on a promissory note after a foreclosure sale against appellants William V. Rogers and Ronald J. Marks as guarantors. Asset Lending moved for traditional summary judgment. Rogers and Marks sought to defeat summary judgment based on the affirmative defense of statute of limitations based on untimely service. The trial court granted Asset Lending summary judgment.

On appeal, Rogers and Marks argue that the trial court erred because: (1) a fact question exists as to whether Asset Lending attempted to diligently serve Rogers and Marks: (2) Asset Lending failed to prove that any amount was owed under the note: and (3) Asset Lending's petition and summary-judgment motion failed to specify any cause of action against them. We conclude that the trial court did not err in granting summary judgment, and we affirm.

## I.   BACKGROUND

Sunset Estates, L.P.[1] entered into a promissory note dated October 11, 2007, in the principal amount of $7,069,034.00 (the Note) to MetroBank, N.A. The note was secured by a lien on real property. That same day, both Rogers and Marks entered into guaranty agreements with MetroBank, guaranteeing payment of the Note.[2] Sunset Estates also executed a deed of trust and security agreement in favor of the trustee for MetroBank to secure payment of the Note.

In October 2009, Sunset Estates entered into a modification and renewal agreement concerning the Note with MetroBank. Rogers and Marks, among others,[3] signed this agreement as guarantors. In October 2010, Sunset Estates entered into a second modification and renewal agreement with MetroBank, again with Rogers and Marks as guarantors. In October 2011, Sunset Estates entered into a third modification and renewal agreement with MetroBank. In June 2012, Sunset Estates entered into a fourth modification agreement with MetroBank. In December 2012,

---

[1] The sole general partner of Sunset Estates was Sunset Operating G.P., L.L.C., and Marks signed the Note as manager of Sunset Operating.

[2] In addition, Sunset Operating and nuCitygroup.com LLC each entered into a guaranty agreement with MetroBank. Marks signed these agreements as manager of each respective company.

[3] Sunset Operating, Horizon United Group International, LLC, and nuCitygroup.com also signed the modification and renewal agreement as guarantors.

2

Sunset Estates entered into a fifth modification agreement with MetroBank. Rogers and Marks both signed the third, fourth, and fifth modification agreements as guarantors. The Note was due and payable on October 10, 2012. The guarantors, including Rogers and Marks, failed to pay the Note as required by its terms.

By an allonge and transfer of debt and liens dated April 10, 2013, MetroBank endorsed the Note to the order of and transferred the liens securing payment thereof along with the guaranty agreements to H/D Management, Inc. By an allonge and transfer of debt and liens dated May 29, 2013, H/D Management endorsed the Note to the order of and transferred the liens securing payment thereof along with the guaranty agreements to Asset Lending, LLC. Asset Lending currently owns and holds the Note, deed of trust, and guaranty agreements.

Asset Lending appointed its manager John Hilton as substitute trustee. Hilton timely posted and sent notice of substitute trustee's sale to Rogers and Marks, informing them that the property described in the deed securing the Note would be sold at foreclosure on November 5, 2013. As of November 5, after allowing all offsets and credits, the outstanding principal unpaid balance due under the Note was $1,315,096.39 plus accrued interest of $98,578.18, for a total due of $1,413,674.57. Asset Lending was the highest bidder; the property was sold to Asset Lending for $575,000 as a credit on the Note. Therefore, the remaining deficiency on the Note is $838,674.57 in outstanding principal, plus interest that continues to accrue.

On October 14, 2015, Asset Lending filed suit against Sunset Estates, Sunset Operating G.P., L.L.C., nuCitygroup.com, L.L.C., Rogers, and Marks.[4] Asset Lending sought to recover the remaining deficiency after the foreclosure sale on the unpaid outstanding balance of the Note. Marks answered and was deemed served

---

[4] All of the defendants filed a notice of appeal. Only Rogers and Marks, however, filed a brief.

on February 26, 2016. Rogers answered and was deemed served on April 18, 2016. Both Rogers and Marks raised the affirmative defense of the two-year statute of limitations under section 51.003(a) of the Texas Property Code.

Asset Lending filed a motion for summary judgment. In its motion, Asset Lending sought summary judgment as to its claims against Rogers and Marks for the outstanding balances owed on the Note. Asset Lending also sought summary judgment because under the guaranty agreements Rogers and Marks waived all of their rights and defenses under section 51.003. Attached to Asset Lending's motion, in pertinent part, were:

- an affidavit by Hilton;
- the Note;
- the first modification and renewal agreement;
- the second modification and renewal agreement;
- the third modification and renewal agreement;
- the fourth modification;
- the fifth modification;
- Rogers's guaranty agreement;
- Marks's guaranty agreement;
- Sunset Estates' deed of trust and security agreement;
- the allonge to H/D Management;
- the transfer of debt and liens to H/D Management;
- the allonge to Asset Lending;
- the transfer of debt and liens to Asset Lending;
- a check dated May 30, 2013, in the amount of $795,890.14 from First American Title Company payable to Asset Lending;
- the appointment of substitute trustee;
- the notice of posting for foreclosure;

4

- the notice of substitute trustee's sale;

- the substitute trustee's deed;

- a business records affidavit by Steve LaFredo, custodian of records for East West Bank, the successor by merger to MetroBank, with attachments, including bank records for the Note;

- a mailing affidavit for the notice of foreclosure posting and notice of substitute trustee's sale;

- a posting and filing affidavit for the notice of substitute trustee's sale;

- and an affidavit by Asset Lending's attorney regarding attorney's fees.

Rogers and Marks responded to Asset Lending's summary-judgment motion. Rogers and Marks argued that Asset Lending was not entitled to summary judgment because service was not effected on them until after the limitations period had expired on November 5, 2015. *See* Tex. Prop. Code Ann. § 51.003(a) (West 2014) ("[A]ny action to recover [a] deficiency must be brought within two years of the foreclosure sale and is governed by this section."). Rogers and Marks asserted that Asset Lending needed to meet its burden to explain the delays and demonstrate due diligence in attempting service.

Asset Lending replied to Rogers and Marks's response and attached various exhibits.[5]  Asset Lending also provided a timeline for Rogers and for Marks in an

---

[5] Attached to Asset Lending's reply were: the original citation on Marks, dated October 19, 2015; the original citation on Rogers, dated October 19, 2015; the declaration of private process server Henry Heinbuch regarding due diligence of attempted service on Marks; the declaration of private process server Kelly Turner in support of the motion for alternate service; the return of rule 106 service on Marks; and the return of rule 106 service on Rogers. Asset Lending also requested that the trial court take judicial notice of: its docket; issuance of citations; rule 106 orders; and the facts contained therein for the date the original petition was filed, the date of issuance of citations for Rogers and Marks, the dates of the filing of rule 106 motions, and the dates of service of rule 106 citations.

attempt to demonstrate its diligence. Rogers and Marks filed a supplemental response. Rogers and Marks pointed to particular gaps in the timelines, arguing Asset Lending's "factual recitation" showed "that certain factual issues remain open." Asset Lending replied to Rogers and Marks' supplemental response, arguing that it conclusively established its exercise of reasonable due diligence and pointing out that Rogers and Marks presented no evidence otherwise.[6]

On September 9, 2016, the trial court signed an order granting Asset Lending final summary judgment as to all the defendants, including Rogers and Marks.[7] The trial court awarded Asset Lending: damages in the amount of $838,674.57, representing the unpaid principal balance of the Note; prejudgment and postjudgment interest on the unpaid principal balance of $838,674.57 at the rate of 18% per annum as provided in the Note beginning November 6, 2013, until paid; attorney's fees of $15,000.00 together with postjudgment interest thereon at the rate of 5% per annum until paid; and attorney's fees should Asset Lending prevail on any appeal. The order did not specify the ground or grounds the trial court relied on for its ruling. Rogers and Marks filed a motion for new trial, arguing in pertinent part that Asset Lending failed to explain why it took 164 days to effect service on Rogers and 113 days to effect service on Marks. The trial court denied the motion for new trial. Rogers and Marks timely appealed.

## II.   ANALYSIS

### A. Standard of review

We apply de novo review to the grant of a traditional motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[6] Asset Lending attached a copy of *Holstein v. Federal Debt Management, Inc.*, 902 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1995, no writ).

[7] *See supra* n.4.

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we must affirm summary judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Oliphint v. Richards*, 167 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

Courts properly render traditional summary judgment if the motion and evidence show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A plaintiff moving for summary judgment must conclusively prove all essential elements of his claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).

Once the movant facially establishes its right to summary judgment, the burden shifts to the nonmovant to present a material fact issue that precludes summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Dolcefino v. Randolph*, 19 S.W.3d 906, 916 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

In their summary-judgment response, Rogers and Marks relied on the affirmative defense of statute of limitations. If the nonmovant relies on an affirmative defense to oppose summary judgment, then he must come forward with

7

summary-judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

On appeal, in addition to arguing that (1) they raised a fact issue on statute of limitations, Rogers and Marks argue that the trial court erred in granting summary judgment because (2) Asset Lending did not meet its burden to show the amount of deficiency due, if any, and (3) Asset Lending's petition fails to state a cause of action. We first consider whether Asset Lending facially established its right to summary judgment regarding its deficiency claims (issues two and three) and then whether Rogers and Marks raised a fact issue on their limitations defense (issue one).

## B. Fair notice of Asset Lending's deficiency claims

In their third issue, Rogers and Marks argue that Asset Lending's petition did not state a cause of action and therefore summary judgment was inappropriate. We disagree.

Texas follows a "fair notice" standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. *Id.* at 897. The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense. *Id.* "The test is whether an opposing attorney of reasonable competence, with the pleadings before him, can ascertain the basic issues in controversy." *Hand v. Dean Witter Reynolds Inc.*, 889 S.W.2d 483, 489 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see Bowen v. Robinson*, 227 S.W.3d 86, 91 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

A petition is construed liberally in favor of the pleader if no special exceptions are filed. *See Auld*, 34 S.W.3d at 897. Under a liberal construction, we must find that the petition contains any claims which reasonably may be inferred from the specific language used in the petition, even if the petition fails to state all of the elements of the claim, misidentifies or fails to identify an applicable statute, or fails to use certain words. *See id.* at 896–97 (misidentification of applicable statutory provision); *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) ("A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged."); *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (lack of identification of applicable statutory provision); *Piland v. Harris Cty.*, No. 14-12-00087-CV, 2013 WL 151626, at *4 (Tex. App.—Houston [14th Dist.] Jan. 15, 2013, no pet.) (mem. op.) (lack of usage of word "breach").

The record does not reflect that Rogers and Marks filed special exceptions based on Asset Lending's alleged failure to state any cause of action. Within its original petition, Asset Lending alleged the factual background related to: the execution, modification, and renewal of the Note; the guaranty agreements; the deed of trust as security for the indebtedness; the transfer of the Note, lien, and guaranty agreements to Asset Lending; the defendants' failure to pay the Note on the date it came due; the foreclosure of the deed of trust; and the outstanding deficiency as of the date of the foreclosure sale. Asset Lending alleged that all conditions precedent to the foreclosure sale and to its right to recover from the defendants "for the deficiency resulting after that sale have occurred or were fully performed and satisfied." *See LSREF2 Cobalt (TX), LLC v. 410 Ctr. LLC*, 501 S.W.3d 626, 635–36 (Tex. App.—San Antonio 2016, pet. denied) (describing elements of deficiency claims against guarantor under section 51.003). Pursuant to the Note, modification

9

and renewal agreements, deed of trust, and guaranty agreements, Asset Lending also requested that the defendants pay its attorney's fees "incurred in connection with the collection of this debt." Although Asset Lending did not reference section 51.003, that particular section of the Texas Property Code governs actions to recover a deficiency in indebtedness remaining after a foreclosure sale. Tex. Prop. Code Ann. § 51.003 ("Deficiency Judgment"); *see Auld*, 34 S.W.3d at 897 ("Being that there was, and is, only one punitive-damages cap provision in Chapter 41, it is hard to imagine that Auld was unaware of exactly what Horizon was claiming.").

Moreover, Asset Lending's pleading met the purpose of the fair notice rule by sufficiently enabling Rogers and Marks to prepare a defense. *See Auld*, 34 S.W.3d at 897. In their amended answers, Rogers and Marks stated that they were raising the affirmative defense of statute of limitations. In particular, Rogers and Marks based this defense on these facts: that Asset Lending had brought "a deficiency action . . . against [each of them], as a guarantor, arising from that certain foreclosure sale which occurred on November 5, 2013" and that "under Section 51.003(a) of the Texas Property Code, a deficiency action must be brought within two years of the foreclosure sale." Rogers and Marks then alleged facts concerning Asset Lending's service dates after limitations expired and its lack of diligence.

In its motion for summary judgment, Asset Lending incorporated its original petition and alleged that its case was "a suit for recovery of sums due under a Promissory Note . . . the payment of which is unconditionally guaranteed by Marks [and] Rogers . . . as set forth in the Plaintiff's Original Petition." Asset Lending also stated that it "sued Rogers and Marks for the outstanding balance owed on the Note, the payment of which has been unconditionally guaranteed by Rogers and Marks" and that its summary-judgment motion "embrace[d] Asset's claims against Rogers and Marks for the outstanding balances owed on the Note." Asset Lending then

10

went through the evidence supporting the factual background on the Note, the guaranty agreements, the deed of trust, the transfer of the agreements, the defendants' default, the foreclosure, and the outstanding deficiency balance, all of which was included in its petition. Further, Asset Lending alleged facts and referenced evidence to support their argument that Rogers and Marks waived all their rights and defenses "under Texas Property Code Section 51.003 et seq."

In their response and supplemental response, Rogers and Marks stated that Asset Lending "[a]s set forth in the Petition . . . has asserted a deficiency action against [them] . . . based upon a prior foreclosure sale of certain real property." Again, Rogers and Marks did not specially except to Asset Lending's petition or otherwise point out any alleged pleading deficiency in the trial court. Rather, Rogers and Marks defended themselves against Asset Lending's motion by relying on the two-year statute of limitations under section 51.003(a) for deficiency actions. In their motion for new trial, Rogers and Marks also stated that Asset Lending "[a]s set forth in the Petition . . . has asserted a deficiency action against [them] . . . based upon a prior foreclosure sale of certain real property." Rogers and Marks again relied on their statute-of-limitations defense and did not point out any pleading deficiency.

Because we must construe Asset Lending's pleading in its favor, and because Asset Lending pleaded information specific enough to provide Rogers and Marks with notice of its intent to bring deficiency claims under section 51.003, we conclude that the trial court did not err in considering Asset Lending's motion for summary judgment. *See id.* We overrule Rogers and Marks's third issue.

## C. Amount of the deficiency

In their second issue, Rogers and Marks contend that summary judgment was improper because Asset Lending failed to offer competent evidence of the amount

due, if any. We first consider Asset Lending's argument that Rogers and Marks waived this issue. Because Asset Lending's traditional summary judgment must stand on its own merits, Rogers and Marks can argue on appeal that Asset Lending's proof is insufficient as a matter of law to support summary judgment even if they did not respond to Asset Lending's proof of its deficiency claims in the trial court. *See M.D. Anderson Hosp. and Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam) (citing *Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999), and *Clear Creek Basin*, 589 S.W.2d at 678). Therefore, we will consider Rogers and Marks's legal-sufficiency challenge to Asset Lending's evidence of the balance due.

To recover a deficiency on a note, Asset Lending had to establish: (1) the existence of the note, (2) that the borrower signed the note, (3) that Asset Lending was the legal owner and holder of the note, and (4) that a certain balance was due and owing on the note. *See LSREF2 Cobalt*, 501 S.W.3d at 635 (citing *Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex. App.—San Antonio 1998, no pet.), and *Clark v. Dedina*, 658 S.W.2d 293, 295–96 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd)). To recover on the guaranty, Asset Lending had to establish: (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder, (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor. *See id.* at 635–36 (citing *Lee v. Martin Marietta Materials Sw., Ltd.*, 141 S.W.3d 719, 720–21 (Tex. App.—San Antonio 2004, no pet.)).

Here, Asset Lending submitted the Note signed by Sunset Estates and the guaranty agreements signed by Rogers and Marks. Asset Lending submitted documents showing the transfer of the Note from the original lender MetroBank to H/D Management to Asset Lending and the corresponding assignment of the guaranty agreements. Asset Lending submitted the successor trustee's deed showing

12

that the property securing the debt was purchased by Asset Lending for the sum of $575,000.00.

Asset Lending also submitted Hilton's affidavit. Hilton averred that, as manager of Asset Lending, part of his current duties included the administration and collection of overdue notes, including the Note. Hilton stated that he had in his custody or control the complete records of Asset Lending pertaining to the indebtedness of Rogers and Marks. Hilton averred that Asset Lending was the owner and holder of the Note and of the guaranty agreements. Hilton stated that the Note was not paid off when it matured on October 10, 2012. Hilton discussed the transfer of the Note from MetroBank (now East West Bank) to H/D Management and then to Asset Lending. Based on MetroBank records, Hilton stated that as of March 6, 2013, the outstanding principal balance was $2,123,783.44, with accrued interest of $144,642.19. After crediting a check for $795,890.14 paid to Asset Lending for release of its lien on a portion of the encumbered property, and allowing all offsets and credits, Hilton stated that on the date of sale the total indebtedness due and owing on the note including principal and interest was $1,413,674.57. Hilton averred that after crediting the foreclosure sales price of $575,000.00, the remaining deficiency was $838,674.57 as of November 5, 2013. Hilton stated that interest continued to accrue on the unpaid principal balance due until paid from and after November 6, 2013, at the maximum rate of interest allowed by law as set forth in the Note.

Rogers and Marks contend that "there is no competent summary judgment evidence to demonstrate what the amount owed, if any, at the time of summary judgment was granted." They fault Asset Lending for not providing records showing the payment history on the Note (or lack thereof) during the period from March 6, 2013, to April 11, 2013. However, Rogers and Marks have not cited, nor have we located, any authority requiring that level of payment-history detail with regard to

presenting competent evidence of the balance due on a note. Generally, detailed proof of the balance is not required. *E.g.*, *Hudspeth*, 985 S.W.2d at 479. In *Hudspeth*—a case involving a claim to recover a deficiency on a note that was sold to the current holder after it matured and was not paid off—the San Antonio Court of Appeals considered whether the amount of the judgment was supported by competent evidence. *Id.* at 478–79. There, in evidence was the affidavit of the asset manager for the current holder of the note, who stated the total amount due and owing under the note. *Id.* at 479. In concluding that the affidavit was competent to support summary judgment on the amount of the balance, the *Hudspeth* court explained:

> A lender need not file detailed proof reflecting the calculations reflecting the balance due on a note; an affidavit by a bank employee which sets forth the total balance due on a note is sufficient to sustain an award of summary judgment. *Martin v. First Republic Bank Fort Worth*, 799 S.W.2d 482, 485 (Tex. App.—Fort Worth 1990, writ denied). Courts have upheld summary judgments based on affidavits that simply identified a promissory note and a lump sum figure as the principal balance and interest due and owing by the nonmovant on that note. *Thompson v. Chrysler First Bus. Credit Corp.*, 840 S.W.2d 25, 28–29 (Tex. App.—Dallas 1992, no writ); *Gen. Specialties, Inc. v. Charter Nat'l Bank–Houston*, 687 S.W.2d 772, 774 (Tex. App.—Houston [14th Dist.] 1985, no writ). *See generally* Timothy Patton, Summary Judgment in Texas: Practice, Procedure and Review § 9.06[2][e] (2d ed. 1996).

*Id.* (alternations in orig.). As in *Hudspeth*, Hilton, manager for the current Note holder Asset Lending, clearly stated in his affidavit the total amount due and owing under the Note.

Rogers and Marks contend that Hilton provided "conclusory statements about the balance of the Note." We disagree. Our court consistently has recognized that "[a]n affidavit stating the balance due on a promissory note can be specific and

14

sufficient on its face to establish a fact that could be proven at trial so summary judgment based in part on the affidavit is proper." *Sandhu v. Pinglia Invs. of Tex., L.L.C.*, No. 14-08-00184-CV, 2009 WL 1795032, at *5 (Tex. App.—Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.) (affidavit not conclusory where affiant stated specific amount due on note as of certain date and represented that amount included principal, interest, and contractual delinquency charges); *Calzada v. Am. First Nat'l Bank*, No. 14-07-00022-CV, 2008 WL 324912, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2008, no pet.) (mem. op.) (affidavit based upon personal knowledge is considered sufficient if affiant identifies attached copy of note as being true and correct and verifies amount of principal and interest owed on date of default); *8920 Corp. v. Alief Alamo Bank*, 722 S.W.2d 718, 720 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("The affidavit was made on Hollingsworth's personal knowledge; the notes and guaranty agreement were identified; and the principal balances and interest due were recited. Such statements are clearly not conclusory."); *Ecurie Cerveza Racing Team, Inc. v. Tex. Commerce Bank.*, 633 S.W.2d 574, 575 (Tex. App.—Houston [14th Dist.] 1982, no writ) ("[W]e find the statement of balance due to be specific and sufficient on its face to establish a fact which could be proven at trial."). Here, based on the Note, guaranty agreements, and other documents, Hilton not only verified the total amount of remaining deficiency due on the Note after the foreclosure sale, but also included specific details regarding the balance on and other credits against the Note over time.

To the extent Rogers and Marks complain that Hilton "has not demonstrated personal knowledge about the Note's history before it was owned by his employer Asset Lending, so his conclusory statements are not competent," Rogers and Marks did not object to a lack of personal knowledge by Hilton in the trial court and have waived this objection. *See Shelton v. Kalbow*, 489 S.W.3d 32, 51 (Tex. App.—

15

Houston [14th Dist.] 2016, pet. denied) (citing *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc)).

Even if not waived, Hilton, as manager of Asset Lending, averred that he had personal knowledge of each of the matters stated in his affidavit and that there were true and correct. Hilton explained that as part of his current duties he administered and collected on the Note. *See Calzada*, 2008 WL 324912, at *3 (where affiant identified herself as bank's loan officer and explained she was charged with collection of the note, her averments regarding amounts due under the note were factual statements within her knowledge and were not conclusory). Hilton also stated that he had control over Asset Lending's complete records related to the Note and Rogers and Marks's indebtedness, which included historical business records related to the Note from MetroBank. Further, the record reflects that Hilton in fact had a basis for personal knowledge as to the history of the Note at H/D Management—Hilton signed the second allonge and transfer from H/D Management to Asset Lending as the president of H/D Management. We conclude that Asset Lending presented competent evidence to show the amount due and owing on the Note.

Rogers and Marks did not present any affidavit or other evidence to controvert Asset Lending's evidence of the deficiency balance. Even if they had, Texas courts have concluded that "the showing of a lack of information" related to a bank's affidavit regarding payment history to determine the balance due on a note does not raise a fact issue to defeat summary judgment. *Martin*, 799 S.W.2d at 485 (guarantors' mere assertion of lack of information regarding how certain time period of interest was calculated in their affidavit did not defeat summary judgment); *Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 938 (Tex. App.—Amarillo 1985,

16

writ ref'd n.r.e.) (same as to guarantors' assertion of lack of information regarding credits on notes); *see Thomas v. First City, Texas-Bryan, N.A.*, No. B14-91-00047-CV, 1992 WL 133823, at *4 (Tex. App.—Houston [14th Dist.] June 18, 1992, no writ) (op., not designated for publication) ("[M]ere guesswork in a controverting affidavit alleging possible usury or improper credit of payments was not enough to create issues of fact or to dispute the evidence presented by the bank." (discussing *Martin*)).

We conclude that Asset Lending produced legally-sufficient evidence to meet its burden on summary judgment to demonstrate the $838,674.56 amount of deficiency due and owing on the Note. Rogers and Marks did not present any controverting evidence raising a fact issue otherwise. *See Sandhu*, 2009 WL 1795032, at *5; *8920 Corp.*, 722 S.W.2d at 720. We overrule Rogers and Marks' second issue.

## D. Failure to attack waiver ground for summary judgment

In their first issue, Rogers and Marks argue that the trial court erred in granting summary judgment because Asset Lending failed to serve them before the statute of limitations expired and there is a fact issue as to whether it made diligent efforts to serve them.

We need not address this argument. In its summary-judgment motion, Asset Lending specifically argued that "[a]s a matter of law, Rogers and Marks have waived their rights under Texas Property Code Section 51.003 et seq." Asset Lending produced evidence of the waiver clauses contained in the guaranty agreements executed by Rogers and Marks. These waiver clauses provide: "**Guarantor waives all rights and defenses under Section 51.003, 51.004 and 51.005 of the Texas Property Code and under any amendments, remodifications, supplements or any successor statute or law of or to any such**

17

**statute or law.**" Asset Lending also cited *Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1 (Tex. 2014).[8]

In their responses and on appeal, Rogers and Marks relied and continue to rely on their having raised a fact issue on their affirmative defense of statute of limitations to defeat Asset Lending's summary judgment. However, Rogers and Marks did not attack the waiver ground in the trial court, so they could not do so on appeal. *See Madeksho v. Abraham, Watkins, Nichols & Friend*, 57 S.W.3d 448, 453 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("We do not consider on appeal grounds not raised in the trial court in opposition to a summary judgment motion." (citing *Clear Creek Basin*, 589 S.W.2d at 676)); *Morgan*, 699 S.W.2d at 938 ("[S]ince it was not expressly presented to the trial court as a reason to defeat the bank's summary judgment motion, it is not cognizable on appeal as a ground to avoid the summary judgment rendered." (discussing *Clear Creek Basin*)).

Nor do they attack the waiver ground on appeal. Because Rogers and Marks do not attack this independent, alternative basis that could, if meritorious, support the trial court's order granting summary judgment as to Rogers and Marks' statute-of-limitations defense, we must affirm. *See Stow v. Slammin 4, LLC*, No. 14-15-00044-CV, 2016 WL 3134520, at *8 (Tex. App.—Houston [14th Dist.] June 2, 2016, pet. denied) (mem. op.); *Morrell Masonry Supply, Inc. v. Brickland Homes, Inc.*, No. 14–12–00684–CV, 2013 WL 5883799, at *3 (Tex. App.—Houston [14th Dist.] Oct. 31, 2013, no pet.) (mem. op.) (citing *Britton v. Tex. Dep't of Criminal*

---

[8] Our court has since applied *Moayedi*'s holding—that guaranty-agreement language waiving "any," "each," or "every" defense "results in a broad waiver of *all possible defenses*" under section 51.003—to the affirmative defense of the two-year statute of limitations under section 51.003. *Godoy v. Wells Fargo Bank, N.A.*, 542 S.W.3d 50, 53 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) ("[W]e conclude that Godoy's broad waiver of all defenses available to guarantors under the anti-deficiency statute necessarily includes a defense based on 51.003(a)'s two-year statute of limitations.").

*Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)); *In re A.M.P.*, 368 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

We overrule Rogers and Marks's first issue.

### III.  CONCLUSION

Having overruled all of Rogers and Marks's issues, we affirm the trial court's judgment.


/s/     Marc W. Brown
Justice

Panel consists of Justices Boyce, Jamison, and Brown.